UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

Present: The Honorable     JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| M. Lindaya | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings:**        **(IN CHAMBERS) ORDER RE MOTION TO REMAND (DKT. 15)**

## I.    Introduction

On January 29, 2025, Anthony Sullivan and Denise Wallace (collectively, "Plaintiffs"), brought this action against General Motors, LLC ("Defendant" or "GM"), and Does 1–10 in the Los Angeles Superior Court, asserting claims arising from Plaintiffs' purchase of a 2020 Chevrolet Malibu (the "Vehicle"). Dkt. 1-1. Defendant was served with a copy of the Complaint and a summons on June 4, 2025. Dkt. 15-1 ¶ 5.

The Complaint advances three causes of action: (1) violation of Cal. Civ. Code § 1793.2(d) of the Song-Beverly Act; (2) violation of Cal. Civ. Code § 1793.2(b) of the Song-Beverly Act; and (3) violation of Cal. Civ. Code § 1793.2(a)(3) of the Song-Beverly Act. Dkt. 1 ¶¶ 8–33.

On September 22, 2025, Defendant filed a notice of removal on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, and 1446. Dkt. 1 ("Notice of Removal"). On October 20, 2025, Plaintiffs filed a Motion for Remand. Dkt 15 ("Motion"). On November 3, 2025, Defendant filed an opposition. Dkt. 17 ("Opposition"). On November 17, 2025, Plaintiffs filed a reply. Dkt. 18 ("Reply").

A hearing on the Motion was held on December 1, 2025, and the Motion was taken under submission. Dkt. 22. For the reasons stated in this Order, the Motion is **DENIED**.

## II.    Background[1]

### A.    Parties

Plaintiffs resided in Hawthorne, California at all relevant times. Dkt. 1-1 ¶ 2. Defendant is a Delaware limited liability company that is registered to do business in California. *Id.* ¶ 4. Defendant is engaged in the design, manufacturing, assembly, production, construction, marketing, sale, and/or distribution of motor vehicles. *Id.*

---

[1] All facts recited in this Order are based on the allegations advanced in the Complaint. This Order does not constitute a finding as the allegations, but a consideration of them with respect to the issues raised by the Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

      B.      Substantive Allegations in the Complaint

On or about February 19, 2020, Plaintiffs entered into a warranty contract with Defendant regarding the Vehicle, which was manufactured and distributed by Defendant. Dkt. 1-1 ¶¶ 9, 11. The Vehicle is primarily used for family or household purposes. *Id.* ¶ 10. The contract included certain written warranties against defects, including those as to the engine and exhaust system. *Id.* ¶ 12. Certain defects, including but not limited to those as to the engine and exhaust system, manifested during Plaintiffs' ownership of the Vehicle. *Id.*

Plaintiffs delivered the Vehicle to authorized service and repair facilities for diagnosis and repair. *Id.* ¶ 13. Defendant failed to service or repair the Vehicle after a reasonable number of opportunities to do so. *Id.* ¶ 14.

**III.**    **Analysis**

      A.      Legal Standards

Except as precluded by Congress, any civil action brought in a state court may be removed by the defendant if, at the time of removal, there is original jurisdiction over the action. 28 U.S.C. § 1441(a). Original jurisdiction may be established through federal question jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Federal question jurisdiction is present "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also* 28 U.S.C. § 1331. Diversity jurisdiction is present where the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states. *See* 28 U.S.C. §§ 1332, 1441.

A motion to remand is the procedural means to challenge the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A motion to remand may raise either a facial or a factual challenge to the defendant's jurisdictional allegations made in support of removal. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). "A facial attack accepts the truth of the [jurisdictional] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020)). In contrast, a factual attack "contests the truth of the [jurisdictional] factual allegations, usually by introducing evidence outside the pleadings." *Salter*, 974 F.3d at 964 (*Leite*, 749 F.3d at 1121).

In response to a facial attack, the defendant is not required to present evidence in support of removal jurisdiction. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019). Thus, when the moving party does not contest the factual allegations made in the removal notice, but instead asserts that those allegations are facially insufficient to show federal jurisdiction, the factual allegations are deemed true and all reasonable inferences are drawn in favor of the removing party. *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023).

Only upon a factual attack must a defendant support its allegations with competent and admissible evidence that seeks to establish them under the preponderance of the evidence standard. *Leite*, 749 F.3d at 1122; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (when removal is challenged, "both sides submit proof and the court decides, by a preponderance of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

evidence," whether the elements of removal have been satisfied (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014))).

Because federal courts are courts of limited jurisdiction, the removal statute is to be strictly construed; any doubt about removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't Remediation, L.L.C. v. Dep't of Health & Env't Quality*, 213 F.3d 1108, 1113 (9th Cir. 2000).

> B.     Application

The Motion presents two bases for the remand of this action. Dkt. 15 at 6–8. *First*, Plaintiffs contend that the Notice of Removal was filed beyond the 30-day period required by Section 1446(b)(1), and the one-year period required by Section 1446(c). *Id.* at 6–7. *Second*, they argue that the amount-in-controversy is not satisfied, as required by 28 U.S.C. § 1332. *Id.* at 13–15.

> 1.     Timeliness of Removal

> (a)     Legal Standards

In general, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). However, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).[2] Thus, "section 1446(b) identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010).

Whether a defendant was, for assessing the timeliness of removal, on "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). That analysis proceeds in the following manner:

> [T]he first thirty-day requirement is triggered by defendant's receipt of an "initial pleading" that reveals a basis for removal. If no ground for removal is evident in that pleading, the case is "not removable" at that stage. In such case, the notice of removal may be filed within thirty days after the defendant receives "an amended pleading, motion, order or

---

[2] Section 1446(c)(1) provides an exception to Section 1446(b)(3). It states that "[a] case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). This exception is not at issue here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

other paper" from which it can be ascertained from the face of the document that removal
is proper.

*Id.*

Where the initial pleading does not set forth a "[]determinate" ground for removal, the second 30-day
trigger period stated in 28 U.S.C. § 1446(b)(3), begins only "after the defendant receives 'an amended
pleading, motion, order or other paper' from which it can be ascertained from the face of the document
that removal is proper." *Harris*, 425 F.3d at 693–94 (quoting 28 U.S.C. § 1446(b)(3)). This 30-day
period begins only when an "amended pleading, motion, order, or other paper . . . make[s] a ground for
removal 'unequivocally clear and certain.'" *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021).

Beyond those two deadlines, a defendant may remove a case where it "could have" demonstrated
removability earlier based on its knowledge beyond the pleadings." *Kuxhausen v. BMW Fin. Servs. NA
LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013). It is not, however, "'obligated to do so.'" *Id.*

(b)      Application

Plaintiffs first argue that the first 30-day period was triggered on June 4, 2025, which is the date on
which Defendant was served with the Complaint, because the Complaint invoked federal-question
jurisdiction through a Magnuson-Moss Warranty Act ("MMWA") claim. Dkt. 15 at 6. However, the
Complaint does not assert an MMWA claim, or any other claims arising under federal law.[3]  *See
generally* Dkt. 1-1.

Plaintiffs next argue that first 30-day period was triggered because the Complaint expressly "la[id] out
the specific forms of statutory relief sought" notwithstanding that it did not "allege a specific monetary
relief figure . . . ." Dkt. 15 at 12. This argument is unpersuasive. The Complaint did not trigger the first
deadline for removal because it did not contain any determinate allegation of the amount-in-
controversy.[4]  *See Kuxhausen,* 707 F.3d at 1139 (the first removal deadline is not triggered by
"indeterminate" pleadings, *i.e.*, pleadings that do not, on their face, "make clear whether the required
jurisdictional elements are present").

Further, contrary to Plaintiffs' argument, Dkt. 15 at 12, it is not material to timeliness of the removal that
the Complaint was filed under state court "unlimited jurisdiction," which applies to claims for damages
exceeding $35,000. Thus, that statement did not in itself demonstrate that the damages sought
exceeded $75,000. *See Stusa Holdings v. Ford Motor Co.*, No. 21-CV-2172, 2022 WL 2235815, at *1–
2 (C.D. Cal. Feb. 22, 2022) (rejecting argument that complaint triggered 30-day removal period where

---

[3] Plaintiffs' contention to the contrary appears to be the result of using "boilerplate pleadings" in this action, and
failing to cite-check them. *See Rahman v. FCA US LLC*, 594 F. Supp. 3d 1199, 1207 (C.D. Cal. 2022)
(recognizing that "routine lemon law case[s] . . . generally rely upon boilerplate pleadings and work product").
Plaintiffs' counsel is reminded of their obligations under Rule 11. Future, similar violations may result in the
imposition of sanctions.

[4] Plaintiffs contend, incorrectly, that the requisite amount-in-controversy is $50,000. *See, e.g.*, Dkt. 15 at 10.
Although $50,000 is the amount-in-controversy for an MMWA claim, 15 U.S.C. §§ 2310(d)(3)(B), as noted, no
such claim is advanced in the Complaint. Accordingly, the $75,000 amount-in-controversy set forth in 28 U.S.C.
§ 1332(a) applies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

caption page and accompanying civil cover sheet alleged that damages "exceeded $25,000"); *Bullard v. Allstate Ins. Co.*, No. 06-CV-5550, 2006 WL 3734359, at *3 (N.D. Cal. Dec. 18, 2006) (rejecting the argument that the "label alone" of unlimited jurisdiction suffices to demonstrate that the amount in controversy is satisfied); *Sevilla v. Life Care Centers of Am., Inc.*, No. 15-CV-5977, 2015 WL 7013112, at *2 (C.D. Cal. Nov. 12, 2015) (same).

Further, Plaintiffs' argument that Defendant could have ascertained the amount-in-controversy from the face of the Complaint using extrinsic evidence, Dkt. 15 at 11–12, does not mean that the Notice of Removal was untimely. A defendant "does not have a duty of inquiry" where jurisdictional facts are indeterminate on the face of the complaint. *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013). "[E]ven if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Id.*

Moreover, the second 30-day deadline -- which is initiated by the removing defendant's receipt of an "'amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper," *Harris*, 425 F.3d at 694 (quoting 28 U.S.C. § 1446(b)(3)) -- was not triggered here. Defendant's Notice of Removal states that Defendant conducted a "preliminary investigation" and as a result determined that federal jurisdiction was satisfied. Dkt. 1 at 2. Because "neither the original pleading nor any other paper served on the defendant shows that [the case] is removable," Defendant timely removed the case on the basis of its own "knowledge or investigation." *Carrillo v. Monterey Mech. Co.*, No. 24-CV-9202, 2025 WL 1642423, at *2 (N.D. Cal. June 10, 2025).

Plaintiffs contend that, because Defendant did not cite to any "other paper" under 28 U.S.C. § 1446(b)(3) in its Notice of Removal, it lacked an "objectively reasonable basis for seeking removal within the second 30-day window." Dkt. 15 at 13. This position is not supported by the terms of the removal statute. *See Andrade v. Gen. Motors LLC*, No. 25-CV-7000, 2025 WL 3022669, at *3 (C.D. Cal. Oct. 28, 2025) (rejecting the same argument because it "misunderst[ood] the basis for Defendant's removal and the removal statute."). Defendant is permitted "to remove outside the two thirty-day periods on the basis of *its own information*, provided that it has not run afoul of either of the thirty-day deadlines." *Roth*, 720 F.3d at 1125 (emphasis added). Because Defendant did not rely on any "other paper"[5] to support its assertion of federal jurisdiction in its Notice of Removal, this second 30-day deadline had not been triggered.

Based on the foregoing determinations, "[t]his is simply the kind of case where defendant removed the case based on its knowledge 'beyond the pleadings,' a removal that defendant was not 'obligated' to file pursuant to one of the two 28 U.S.C. § 1446 deadlines, but a removal that defendant nonetheless 'could' file." *Gonzalez v. Nissan N. Am., Inc.*, No. 24-CV-1301, 2024 WL 2782102, at *3 (C.D. Cal. May

---

[5] Documents within Defendant's possession and control, which Defendant might have considered in its investigation, are not the kinds of "other paper[s]" referenced in § 1446(b)(3). *See Adelpour v. Panda Express, Inc.*, No. 10-CV-2367, 2010 WL 2384609, at *4 n.7 (C.D. Cal. June 8, 2010) (the "other paper" in Section 1446(b)(3) cannot be one created by defendant; it "must derive from 'either the voluntary act of the plaintiff . . . or other acts or events not the product of the removing defendant's activity.'" (quoting *Smith v. Int'l Harvester Co.*, 621 F. Supp. 1005, 1007 (D. Nev. 1985))). Similarly, documents received prior to service of the initial pleading do not trigger the second 30-day removal period. *Carvalho*, 629 F.3d at 886.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

29, 2024) (quoting *Kuxhausen*, 707 F.3d at 1141 n.3); *see also Anaya v. Mars Petcare U.S., Inc.*, No. 21-CV-1603, 2021 WL 5578724, at *2 (C. D. Cal. Nov. 29. 2021) ("These two 30-day periods are not the exclusive periods to remove; provided that neither is triggered, a defendant may remove at any time based on the results of its own investigations."). That conclusion is consistent with many recent and well-reasoned district court decisions holding that removal was not untimely under 28 U.S.C. § 1446 under similar circumstances. *See, e.g., Andrade*, 2025 WL 3022669, at *3; *Diaz v. Gen. Motors LLC*, No. 25-CV-2208, 2025 WL 3034060, at *3 (C.D. Cal. Oct. 30, 2025); *Stewart v. Gen. Motors LLC*, No. 25-CV-7153, 2025 WL 2848991, at *3–4 (C.D. Cal. Oct. 7, 2025); *Cesena v. Gen. Motors LLC*, No. 25-CV-7225, 2025 WL 3002616, at *2 (C.D. Cal. Oct. 24, 2025); *Perea v. Gen. Motors LLC*, No. 25-CV-7372, 2025 WL 3034234, at *2 (C.D. Cal. Oct. 30, 2025); *Revollar v. Gen. Motors LLC*, No. 25-CV-7904, 2025 WL 3034059, at *1–2 (C.D. Cal. Oct. 30, 2025).

For those reasons, the Notice of Removal was timely filed.

> 2.    Amount in Controversy

Plaintiffs also contend that Defendant has not met its burden to satisfy the requirements of diversity jurisdiction. Dkt. 15 at 13–17. Plaintiffs do not dispute diversity of citizenship between the parties. Instead, they contend that Defendant has not shown that the amount in controversy exceeds $75,000. Dkt. 15 at 13–17; Dkt. 18 at 6–14.

> (a)    Legal Standards

When an action is removed based on diversity jurisdiction, the removing party also bears the burden of showing that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a). "[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). Thus, "[t]he amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'" *Id.* at 416 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)).

As noted, the amount in controversy is assessed at the time of removal. *Id.* at 417. Thus, it "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 415. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

"If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)). A defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89 (citing 28 U.S.C. § 1446(a)). If the plaintiff contests the defendant's allegation, then the defendant must prove by a preponderance of the evidence that the amount-in-controversy exceeds $75,000. *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). The parties "may submit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Additionally, the defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

(i)        "Actual Price Paid or Payable"

The Complaint seeks damages under the Song-Beverly Act. Dkt. 1-1 at 7. Under that statute, actual damages include "restitution in an amount equal to the actual price paid or payable by the buyer," reduced by "[t]he amount directly attributable to use by the buyer" prior to delivery of the vehicle to the dealer for correction of the problem that gave rise to the nonconformity with the warranty. Cal. Civ. Code § 1793.2(d)(2)(B)–(C). The "actual price paid or payable" by the buyer includes "any charges for transportation and manufacturer-installed options, but excluding nonmanufacturer items installed by a dealer or the buyer, and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees." *Id.* § 1793.2(d)(2)(B).

Amendments to the Song-Beverly Act that became effective on January 1, 2025 require certain reductions to be made in calculating the "actual price paid or payable." These reductions cover negative equity, manufacturers' rebates and credits, and "optional equipment, service contracts, or [guaranteed asset protection ("GAP")] financing purchased by the plaintiff." Cal. Civ. Code § 871.27(b)–(d).[6]

The new "optional equipment, service contracts, or GAP" offset, *id.* § 871.27(b), and manufacturer's rebate offset, *id.* § 871.27(d), share similar language.[7] Both state that these offsets directly reduce "the calculation of the actual price paid or payable." *Id.* § 871.27(b) ("The defendant is entitled to an offset in *the calculation of the actual price paid or payable* for optional equipment, service contracts, or GAP financing . . . ." (emphasis added)); *id.* § 871.27(d) ("Noncash credits . . . typically referred to as a manufacturer's rebate, shall not be included in the *calculation of the actual price paid or payable* and shall not be used to reduce the amount of any negative equity offset." (emphasis added)).

The mileage offset also depends on the "actual price . . . paid or payable." Cal. Civ. Code § 1793.2(d)(2)(C). Specifically, Cal. Civ. Code § 1793.2(d)(2)(C) provides that the mileage offset is to be calculated by modifying the "the actual price of the new motor vehicle paid or payable by the buyer" according to a specified formula.

---

[6] Cal. Code Civ. Proc. § 871.27(b)–(d) applies only to actions "seeking restitution or replacement of a motor vehicle" under the Song-Beverly Act against a "manufacturer who has" made an "elect[ion]" pursuant to Cal. Code Civ. Proc. § 871.29. *See id.* § 871.20(a). Defendant represents that it made such an election, which Plaintiffs do not dispute. Dkt. 1 at 9. Judicial notice is also taken of a California Department of Consumer Affairs webpage that states that Defendant has elected to opt-in to the new Song-Beverly procedures. *See* Cal. Dep't of Consumer Aff., Arbitration Certification Program, Manufacturers, https://www.dca.ca.gov/acp/accepted_manufacturers.shtml (last accessed Mar. 5, 2025).

[7] The "negative equity" offset does not share this language. Cal. Code Civ. Proc. § 871.27(c) ("The defendant is entitled to an offset for negative equity incorporated in the transaction from prior vehicles."). This provision is not at issue in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

"[W]hen the same word appears in different places within a statutory scheme, courts generally presume the Legislature intended the word to have the same meaning each time it is used." *People v. Gray*, 58 Cal. 4th 901, 906 (2014). Accordingly, it is determined that the § 871.27(b) and (d) offsets must be applied, as an initial matter, to reduce the purchase price of the vehicle because these offsets affect the "*calculation* of the price paid or payable." Only after these initial offsets have been applied may the mileage offset be applied, using the "actual price paid or payable" figure that has been "calculated" based on the § 871.27(b) and (d) offsets. Thus, as a textual matter, the mileage offset depends on the "actual price paid or payable" -- a figure whose "calculation" in turn depends on the § 871.27(b) and (d) offsets. Moreover, applying the § 871.27(b) and (d) offsets as a first step -- and subsequently applying the mileage offset based on the offset-adjusted "actual price paid or payable" -- is the best way to harmonize the new Song-Beverly provisions with the existing statutory structure because doing so prevents certain offsets from being double-counted.[8]

With respect to whether finance charges connected to the purchase of a vehicle constitute part of the "actual price paid or payable," "courts have been left with little guidance as to whether the purchaser should recover the outstanding loan balance in addition to amounts paid under a financing agreement." *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 895 (S.D. Cal. 2021). Accordingly, there is "disagreement among the federal district courts regarding the financed charges that are recoverable" under the Song-Beverly Act. *Vivanco v. Ford Motor Co.*, No. 22-CV-23, 2022 WL 4000709, at *3 (S.D. Cal. Sep. 1, 2022).

Based on *Mitchell v. Blue Bird Body Co.*, 80 Cal. App. 4th 32 (2000), some district courts have held that "the actual price paid or payable by the buyer includes only *paid* finance charges," not finance charges that have yet to accrue. *Farrales v. Ford Motor Co.*, No. 21-CV-7624, 2022 WL 1239347, at *3 (N.D. Cal. Apr. 27, 2022) (emphasis added) (citing *Mitchell*, 80 Cal. App. 4th at 37–39). Others have held that any finance charges that are owed under the contract, even if not yet accrued, are part of the "actual price paid or payable" under Cal. Civ. Code § 1793.2(d)(2)(B). *See Canesco*, 570 F. Supp. 3d at 896 (purchase price includes outstanding loan balance, including charges not yet accrued).

The latter view, expressed in *Canesco*, is deemed a better interpretation of the Song-Beverly Act for several reasons. *First*, the language of the Song-Beverly Act permits recovery of not only the actual price paid, but the price "payable." *See* Cal. Civ. Code § 1793.2(d)(2)(B). Even where a finance charge has not yet accrued, and, therefore, is not yet paid, that charge remains payable because the buyer is contractually obligated to pay for the finance charge that will accrue in the future. Thus, the plain language of the statute supports the position that all finance charges, even those not yet accrued, are recoverable in restitution. *Mendoza v. ADP Screening & Selection Servs., Inc.*, 182 Cal. App. 4th 1644,

---

[8] For example, consider a hypothetical case of an offset for a manufacturer rebate of $10,000 on a vehicle with a purchase price of $100,000 that has been driven 12,000 miles before discovery of the defect. If the rebate offset is applied first under Cal. Code Civ. Proc. § 871.27(d), the new, offset-adjusted "actual price paid or payable" is $90,000. Using that figure, the mileage offset would then be $9000. Thus, the amount recoverable in restitution would be $81,000. If, on the other hand, the rebate offset and the mileage offset applied at the same step based on the total, unadjusted price of the vehicle, the mileage offset would be $10,000. This mileage offset would thereby include part of the value of the purchase price that must separately be reduced pursuant to Cal. Code Civ. Proc. § 871.27(d)'s rebate offset. In effect, this method would double-count certain deductions. Thus, in addition to being more consistent with the statutory text, the former method of calculation prevents double-counting.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

1656–57 (2010) ("In interpreting a statute, we first look to the language of the statute, giving effect to its 'plain meaning' according to its ordinary usage, with significance given to every word, phrase, and sentence, when possible. (quoting *Burden v. Snowden*, 2 Cal. 4th 556, 562 (1992))).

*Second*, this interpretation is in harmony with the 2025 amendments to the Song-Beverly Act. In relevant part, they state that "[t]he defendant shall not be responsible for payment of unpaid interest or unpaid financing costs associated with the retail installment sales contract *that will not be owed or paid by the consumer when the lien is paid off*." Cal. Code Civ. Proc. § 871.27(f) (emphasis added). Thus, if certain interest or finance costs will be "owed or paid" by the consumer when the lien is fully satisfied, Cal. Code Civ. Proc. § 871.27(f) suggests that such costs are part of the restitution remedy, even if they are not yet paid.

*Third*, as *Canesco* observed, the purpose of restitution is to "restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Canesco*, 570 F. Supp. 3d at 896 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)). "Thus, return to status quo must include paying off the loan balance. If it did not, the consumer would have his or her down payment and monthly payments returned but left with a loan that still needed to be repaid and no funds to repay it, which would not put the consumer in the position he or she was in before buying the vehicle." *Id.* at 896. Accordingly, the remedial purpose of the Song-Beverly Act supports the interpretation advanced in *Canesco*. *People ex rel. Dep't of Transportation v. Muller*, 36 Cal. 3d 263, 269 (1984) ("A statute which 'is remedial in nature and in the public interest is to be liberally construed to the end of fostering its objectives . . . 'The rule of law in the construction of remedial statutes requires great liberality, and wherever the meaning is doubtful, it must be so construed as to extend the remedy.'" (cleaned up) (quoting *Cont'l Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 434–435 (1946))).

Finally, *Mitchell v. Blue Bird Body Co.*, 80 Cal. App. 4th 32 (2000) did not squarely address this issue, because all finance charges owed in that case had already been paid. *Mitchell*, 80 Cal. App. 4th at 34; *see also McConnell v. Advantest Am., Inc.*, 92 Cal. App. 5th 596, 611 (2023) ("A case is not authority for a proposition not considered therein or an issue not presented by its own particular facts."). Further, the authorities on which *Mitchell* relies supports *Canesco*'s view that all finance charges, including those not yet accrued, are recoverable. *Mitchell*, 80 Cal. App. 4th at 37–38 (deeming persuasive Department of Consumer Affairs regulations, Cal. Code Regs. tit. 16 § 3398.11, which state that, when an arbitration ruling orders a refund, "[t]he decision shall include . . . earned finance charges, if actually paid, incurred, *or to be incurred*" (emphasis altered)). For these reasons, the "the actual price paid or payable" under Cal. Civ. Code § 1793.2(d)(2)(B) is determined to include finance charges owed under the contract, even if they have not yet accrued.

(ii)    <u>Mileage Offset</u>

After the "actual price paid or payable" is calculated according to the above standards, the restitution that can be awarded must be reduced by the mileage offset pursuant to § 1793.2(d)(2)(C). The offset is the value directly attributable to use by the consumer, which is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer . . . by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer first delivered the vehicle" for correction of the problem. Cal. Civ. Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

§ 1793.2(d)(2)(C).[9] The equation for this mileage offset is: (X/120,000) multiplied by the price paid or payable for the vehicle, where X is the number of miles driven prior to the time the vehicle was first delivered for repair. *See id.*

(b)    Application

Although the Complaint seeks damages under the Song-Beverly Act, it does not include allegations as to the total amount of actual damages. Dkt. 1-1 at 7.

The Notice of Removal alleges that the purchase price of the Vehicle was $40,379.40. Dkt. 1 at 5. Further, the Notice of Removal states that, based on Defendant's "preliminary investigation," the total offset was estimated to be $10,534.78, which yielded a "plausible estimate of actual damages of $29,844.62." *Id.* No evidence was proffered in support of these contentions at the time of removal.

In support of the Opposition, Defendant filed a copy of the Retail Installment Sale Contract ("RISC") entered into by Plaintiffs and Defendant. *See* Dkt. 17-2. The RISC shows that the total sales price of the Vehicle was $40,379.04. *Id.* at 2. The RISC also shows that, at the time that Plaintiffs purchased the Vehicle, its odometer reading was 5 miles. *Id.* The RISC states that Plaintiff's first monthly payment of $560.82 was due on April 4, 2020, with the last monthly payment of the same amount to be due on March 4, 2026. *Id.* Accordingly, the total amount payable under the RISC was $40,379.04.[10] *See Amavizca v. Nissan N. Am., Inc.*, No. 22-CV-2256, 2023 WL 3020489, at *4 (C.D. Cal. Apr. 19, 2023) (the actual damages are the total sales price where the defendant submitted a copy of the RISC showing the total sale price, the amount financed, the applicable interest rate, and the payment structure).

The November 22, 2019 invoice submitted by Plaintiffs does not change this conclusion. Dkt. 15-1 at 7. It reflects a factory invoice price of $24,707.48 paid by the dealer and a manufacturer's suggested retail price ("MSRP") of $25,095.00. However, the price paid by a dealer for the Vehicle and the MSRP do not affect the price "actually paid or payable" within the meaning of the Song-Beverly Act, which is $40,379.04 based on the RISC.

---

[9] In general, the amount in controversy calculation does not take into account affirmative defenses, counterclaims and potential offsets. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (the complaint's disclosure of "the existence of a valid defense to the claim" cannot be grounds for showing failure to meet the amount-in-controversy threshold). However, with respect to the amount attributable to the buyer's use of the vehicle under Cal. Civ. Code § 1793.2(d)(2)(C), the Ninth Circuit has held that this "use offset" is properly included in determining the jurisdictional amount. *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 701 (9th Cir. 2018).

[10] This figure includes finance charges owed to Capital One that have not yet been paid, but will be owed by Plaintiffs when the lien is fully paid. *See* Cal. Code Civ. Proc. § 871.27(f). As of June 5, 2025, Plaintiffs had made 62 monthly payments of $560.82, leaving a remaining balance of $4881 in unpaid financing (or approximately nine additional monthly payments). Dkt. 17-4. As noted, these finance charges are appropriately included in the total amount paid or payable. Moreover, even under the less persuasive view that only *accrued* finance charges are part of the purchase price, the remaining nine monthly payments as of June 2025 have accrued during the pendency of this litigation, which makes them part of "all relief claimed at the time of removal to which the plaintiff would be entitled if []he prevails." *Chavez*, 888 F.3d at 417–18. "[T]he mere futurity of *certain classes of damages*' does not preclude them from being part of the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (quoting *Chavez*, 888 F.3d at 417).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

Effective January 1, 2025, additional offsets must be applied in the calculation of the "actual price paid or payable" for negative equity, manufacturers' rebates and credits, and "optional equipment, service contracts, or [guaranteed asset protection] financing purchased by the plaintiff." Cal. Code Civ. Proc. § 871.27(b)–(d). These offsets are properly included in determining the jurisdictional amount. *See, e.g.*, *Lopez v. Ford Motor Co.*, No. 25-CV-1742, 2025 WL 3022849, at *4 (C.D. Cal. Oct. 28, 2025) (deducting these offsets from amount-in-controversy). Moreover, as noted, because these deductions affect the calculation of the "actual price paid or payable," they must be applied before the mileage offset, whose amount depends on the "actual price paid or payable."

Based on the RISC, the following reductions must be made to the calculation of the "actual price paid or payable" for the Vehicle: (1) an offset of $1750 for a manufacturer's rebate; and (2) an offset of $2500 for an optional service contract with third-party First Extended Services. Dkt. 17-2 at 2–3; Cal. Code Civ. Proc. § 871.27(b)(1) ("[D]efendant is entitled to an offset in the calculation of the actual price paid or payable for . . . service contracts . . . supplied by a third party . . . ."); *id.* § 871.27(d) ("[M]anufacturer's rebate[] shall not be included in the calculation of the actual price paid or payable . . . ."). The only other potential offset, which is included in Cal. Code Civ. Proc. § 871.27(c), does not apply because the RISC does not reflect any "negative equity incorporated in the transaction from prior vehicles." Applying these figures: $40,379.04 - $4250 = $36,129.04, which is the adjusted "actual price paid or payable" for the Vehicle.

As noted, the restitution that can be awarded under § 1793.2(d)(2)(B) must be further reduced by the mileage offset, which is the amount directly attributable to use by the consumer. As also noted, the offset is measured by miles driven, prior to the first repair (or attempted repair) pro-rated against a base of 120,000 miles. Cal. Civ. Code § 1793.2(d)(2)(C); *see also Schneider*, 756 F. App'x at 701 (deducting mileage offset from amount-in-controversy).

The Complaint does not allege what the appropriate mileage offset should be, nor whether or at what point any repairs or attempts to repair the Vehicle were made. In support of the Opposition, Defendant provided copies of the repair records for the Vehicle. *See* Dkt. 17-3. A review of them shows that, on or around January 10, 2022, the Vehicle was serviced for a defect, and the odometer reading at that time was 19,810 miles. Dkt. 17 at 28; Dkt. 17-1 ¶ 3 (citing Dkt. 17-3). This results in the calculation of a mileage offset of $5962.80.[11] Applying these figures shows that $36,129.04 - $5962.80 = $30,166.24.[12]

---

[11] 19,810 – 5 miles at purchase = 19,805 miles. (19,805 miles/120,000) x $36,129.04 (price paid or payable for the Vehicle) = $5962.80.

[12] Defendant states that the offset amount is $4084.78, which is based on a purchase price of $24,750.00 for the Vehicle. Dkt. 17 at 28; *see also* Dkt. 17-2 at 2 (showing cash price of $24,750.00 in itemized disclosure). Defendant then proposes a further reduction of $4250 for the manufacturer's rebate and the third-party service contract, which yields an aggregate offset of $8334.78 from the actual price paid of $40,379.04. *Id.* at 28–29. Thus, Defendant proposes that the actual damages are $32,044.26, which is $40,379.04 - $8334.78. Dkt. 17 at 28. As noted, however, certain of these calculations are inaccurate. The relevant starting figure, the "actual price paid or payable," is $40,379.04, rather than the cash price. *See, e.g.*, *Amavizca*, 2023 WL 3020489, at *4 (actual damages are equivalent to the total that plaintiff paid or agreed to pay). The offset of $4250 must then be applied, because the rebate and service contract offsets are expressly not included in the calculation of the "actual price paid or payable." Cal. Code Civ. Proc. § 871.27(b)(1) & (d). Only then may the mileage offset be applied because the mileage offset depends on the "actual price . . . paid or payable." Cal. Civ. Code § 1793.2(d)(2)(C).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
|---|---|---|---|
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

Based on Defendant's submissions, to which Plaintiffs have neither objected nor otherwise responded, for jurisdictional purposes, it has been shown by a preponderance of the evidence that the Complaint seeks $30,166.24 in actual damages.

(c)    Civil Penalties

Under the Song-Beverly Act, a plaintiff may be entitled to a civil penalty no greater than twice the amount of actual damages if a defendant's violations were willful. Cal. Civ. Code § 1794(c). The Complaint seeks the full amount of this civil penalty. It alleges that Defendant intentionally refused to comply with the Song-Beverly Act. Dkt. 1-1 ¶¶ 17, 24, 28. Where a complaint alleges willful violations of the Song-Beverly Act and requests the imposition of the full penalty, courts have included the aforementioned maximum civil penalty in calculating the amount in controversy. *Amavizca*, 2023 WL 3020489, at *6 (collecting cases); *see id.* at *8 ("[Defendant] need not prove that Plaintiff[] [is] more likely than not to obtain the maximum civil penalty award; [Defendant] need only prove, by a preponderance of the evidence, that Plaintiff[] ha[s] placed this amount in controversy.").

As noted, the Complaint alleges that Defendant intentionally violated the Song-Beverly Act. Dkt. 1-1 ¶¶ 17, 24, 28. The Complaint alleges that the 2020 Chevrolet Malibu had one or more defects, including an engine and exhaust system defect. *Id.* ¶ 12. This defect is alleged to substantially impair "the use, value, and/or safety" of the Vehicle. *Id.* It is alleged that Defendant failed to service or repair the Vehicle despite having a reasonable number of opportunities to do so. *Id.* ¶ 14. It is also alleged that Defendant's failure to comply with its obligations under the Song-Beverly Act was willful. *Id.* ¶¶ 17, 24, 28. The basis for this assertion is that Defendant "knew of its legal obligations" but "intentionally declined to follow them." *Id.*

In addition, the repair records submitted by Defendant reflect that the Vehicle was presented for repairs "at least 10 times." Dkt. 17-1 ¶ 3 (citing Dkt. 17-3). Based on the experience of Defendant's counsel in litigating Song-Beverly actions, "plaintiffs pursue civil penalties when there are records of multiple presentations." *Id.* ¶ 6. This argument is persuasive; courts have generally found that a history of repeated unsuccessful repairs is sufficient to create a triable issue of fact as to willfulness at summary judgment. *See In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 689 F. Supp. 3d 760, 771 (C.D. Cal. 2023) (triable issue of fact as to the issue of civil penalties where plaintiff attempted to repair defect three times, but defendant offered no remedies); *Base v. FCA US LLC*, No. 17-CV-1532, 2019 WL 1117532, at *13 (N.D. Cal. Mar. 11, 2019) (same, where plaintiff attempted repairs on eight occasions). This evidence shows that the amount-in-controversy here reasonably encompasses civil penalties under the Song-Beverly Act. *See Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (quoting *Ibarra*, 775 F.3d at 1199)).

For the foregoing reasons, the Complaint alleges that the imposition of a civil penalty is in controversy. With alleged actual damages of $30,166.24, the maximum civil penalty alleged would be twice this amount*, i.e.,* $60,332.48.

Based on the foregoing, Defendant has shown by a preponderance of the evidence the alleged actual damages and civil penalties in controversy total approximately $90,498.72. Plaintiffs also seek an award of attorney's fees and punitive damages, which would increase this amount. However, because it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-08994-JAK (AGRx) | Date | March 6, 2026 |
| Title | Anthony Sullivan et al. v. General Motors LLC et al. | | |

has already been shown that the amount in controversy exceeds $75,000, it is unnecessary to analyze these issues.

*      *      *

Because Defendant has shown by a preponderance of the evidence that there is diversity of citizenship and that the amount in controversy exceeds $75,000, there is subject matter jurisdiction over this action.

**IV.      Conclusion**

For the reasons stated in this Order, the Motion is **DENIED**.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer      LC3